UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSHUA E. WILLIAMS,

    Plaintiff,

    v.                               CAUSE NO. 3:21-CV-556-RLM-MGG

DOMINIC HALL, et al.,

    Defendants.

OPINION AND ORDER

Joshua E. Williams, a prisoner without a lawyer, filed a complaint alleging South Bend police officers used excessive force when arresting him. ECF 1. The court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Williams attached the police reports of the arrest to his complaint. The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court

[determines] the sufficiency of the complaint." Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted). Therefore, the court uses the attached reports to supplement, but not contradict, Mr. Williams' allegations in the complaint.

Mr. Williams alleges that on July 31, 2019, a friend asked him and his stepson to jump her car. ECF 1 at 5. It turns out, the car wouldn't start because it was stolen and On Star had ignition-locked the vehicle. ECF 1-1 at 4. Officer Briar Johnston was investigating the stolen car and saw the two men try unsuccessfully to jump it. *Id*. After they got back in their car to leave, Officer Johnston approached the vehicle, ordered them to stop, and asked them what they were doing around the other car. *Id*. Two other officers, Officer Dominic Hall and Officer Joseph Stitsworth, soon arrived to assist. Officer Johnston describes Mr. Williams as "uncooperative" during the encounter, ignoring orders to keep his hands on the dashboard and looking around as if planning to flee. *Id*. at 5. He says Mr. Williams encouraged his stepson, who was driving, to ignore the commands to park the car and give the officer the keys and instead told him to drive away. *Id*. Mr. Williams's stepson eventually complied with the officer's orders, and Officer Hall handcuffed him without incident. *Id*. at 1-2.

Mr. Williams alleges that he and his stepson "were exited out [of] the vehicle at gunpoint." ECF 1 at 5. He admits that he tried to flee from the officers when he got out of the car but only made it a few feet before he was tackled. *Id*. Officer Johnston reports that as Mr. Williams got out of the car, he pushed Officer Stitsworth and himself out of the way and began running. ECF 1-1 at 5. Officer Johnston tackled him, and he and Officer Stitsworth began wrestling with him. *Id*. Officer Hall came

2

to assist. *Id.* at 2, 17. Officer Hall relates that Mr. Williams was trying to force the other two officers off of him and push himself up, and so Officer Hall punched him in the face, and Officer Stitsworth Tased him with the prongs. *Id.* Both officers say that the first Taser shot had no effect. *Id.* at 2, 5, 17. Officer Stitsworth Tased him again with the second set of prongs. *Id.* at 17. Officer Stitsworth and Officer Johnston say the second shot had no effect, *Id.* at 5, 17, and Officer Hall describes that he "felt [Mr. Williams'] body momentarily seize up but by the time we hit the ground he was actively resisting again." *Id.* at 2. Mr. Williams says that he was in severe pain and dazed from the punch to the face and the two Taser shots at this time, but he was still resisting out of panic and fear of being hurt or even killed. ECF 1 at 6.

At this point, Officer Hall was able to secure Mr. Williams' head, left shoulder, and left hand in a modified side headlock. ECF 1-1 at 2. The officers still couldn't cuff his hand, and so Officer Hall delivered three hammer-strike blows to Mr. Williams's forehead, which stopped Mr. Williams long enough for the officers to secure one of his hands in handcuffs. *Id.* Mr. Williams says the blows split his forehead and made his head bounce off the pavement. ECF 1 at 6. But he continued to resist and didn't allow his other hand to be cuffed. *Id.*; ECF 1-1 at 2.

Several things happened during this struggle. Mr. Williams's pants came down, exposing his bare buttocks and genitals, and a gun fell out of his waistband. ECF 1 at 6; ECF 1-1 at 2, 5, 17. Mr. Williams claims that one of the officers "yank[ed] down" his pants past his thigh area. ECF 1 at 6. Officer Johnston writes, "[a]s the fight ensued, Joshua's pants fell down to his thigh area." ECF 1-1 at 5. Mr. Williams

3

further alleges that the officers twisted his legs and "snatch[ed] his shoes off his feet," injuring his right knee, which was later diagnosed with a torn PCL. ECF 1 at 6.

According to Officer Johnston, Mr. Williams was still actively resisting after the gun was spotted, and wouldn't allow his right hand to be cuffed, so Officer Johnston used Officer Stitsworth's discarded Taser to drive stun Mr. Williams on his buttock, which was the only exposed muscle group at the time. ECF 1-1 at 5. Then the other two officers were able to finish handcuffing Mr. Williams. *Id.* at 2, 17. Mr. Williams alleges that the last Taser strike caused him to seize up and move involuntarily, scraping his genitals and buttocks on the pavement. ECF 1 at 7.

"A claim that an officer employed excessive force in arresting a person is evaluated under the Fourth Amendment's objective-reasonableness standard." Abbott v. Sangamon Cnty., 705 F.3d 706, 724 (7th Cir. 2013). The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441 U.S. 520, 559 (1979). The question is whether the totality of the circumstances justifies the officers' actions. Graham v. Connor, 490 U.S. at 396. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the perfect vision of hindsight. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates

4

the Fourth Amendment. *Id*. An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest. Gonzalez v. City of Elgin, 578 F.3d 526, 539 (7th Cir. 2009). "Factors relevant to the reasonableness inquiry include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Williams v. Brooks, 809 F.3d 936, 944 (7th Cir. 2016) (quotation marks omitted).

Mr. Williams hasn't plausibly alleged that the officers used excessive force during the arrest. Mr. Williams admits that he was resisting arrest throughout the entire encounter, which allowed the officers some license to use force to effectuate the arrest. Each of the uses or displays of force was reasonable in light of Mr. Williams's continued resistance. And the safety of the officers and every onlooker was threatened once the gun was discovered.

For Officer Johnston to order Mr. Williams and his stepson out of the car at gunpoint was not unreasonable. They were suspected of being involved with a stolen car, Officer Johnston was alone when he first approached the car, and the men weren't complying with his orders to put the car in park. *See* Williams v. City of Champaign, 524 F.3d 826, 828 (7th Cir. 2008) (noting it was "prudent" for police to assume suspected robber might be armed and to approach van with gun drawn).

The punch to the face and hammer strikes were reasonable under the circumstances: Mr. Williams was actively fighting the officers' attempts to arrest him.

5

*See* Duran v. Sirgedas, 240 F. App'x 104, 118 (7th Cir. 2007) (no excessive force where officer struck suspect in leg with baton and punched him in the head with a closed fist, where suspect struggled with officers and bit one of them); Prymer v. Ogden, 29 F.3d 1208, 1210, 1216 (7th Cir. 1994) (kneeling on arrestee's back and several kicks to the ribs found objectively reasonable where arrestee resisted arrest and tried to strike officers). The first Taser strike was reasonable. *See* Abbott v. Sangamon Cnty., 705 F.3d 706, 727 (7th Cir. 2013) ("Courts generally hold that the use of a taser against an actively resisting suspect either does not violate clearly established law or is constitutionally reasonable." (collecting cases)). It is undisputed that the first Taser strike was ineffective, so another strike is not unreasonable as Mr. Williams continued to resist. And the final Taser strike in drive stun mode was reasonable in light of the continued struggle to handcuff Mr. Williams, particularly once the unsecured gun was discovered. *See* Dockery v. Blackburn, 911 F.3d 458, 463 (7th Cir. 2018) (granting officer qualified immunity for administering four Taser shots in less than a minute during arrest of actively resisting subject). Mr. Williams doesn't dispute that he continued to struggle, and his subjective reasons why he didn't submit are irrelevant to analyzing the objective reasonableness of the officers' actions. *See id.* ("Excessive-force claims are evaluated against a standard of objective reasonableness. Whether [plaintiff] actually intended to resist does not matter. What matters is how a reasonable officer would construe the circumstances.").

The allegations about the officer pulling Mr. Williams's pants down gives the court pause. Courts are careful to protect a person's privacy when exposed genitals

6

are at issue. *Cf.* United States v. Brown, 233 F. App'x 564, 569 (7th Cir. 2007) (noting one factor in the reasonableness of a search is whether a suspect's private parts are exposed to onlookers). Given the ongoing struggle and discovery of a gun in the waistband, the court won't second-guess the officer's decision to pull down Mr. Williams's pants. There is no indication that it was done in a demeaning manner or that Mr. Williams continued to be exposed once he submitted to the arrest.

Officers don't have an unlimited license to use any and all force they wish just because a suspect resists arrest. "Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force. Force also becomes increasingly severe the more often it is used; striking a resisting suspect once is not the same as striking him ten times." Cyrus v. Town of Mukwonago, 624 F.3d 856, 863 (7th Cir. 2010) (citations omitted). Even looking at the force used cumulatively, this complaint doesn't allege unnecessary repeated applications of force. Nor did the officers continued to use force after Mr. Williams was secured.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile," Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018), but "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." Hukic v. Aurora Loan Servs., 588 F.3d 420, 432 (7th Cir. 2009). Amendment of this complaint would be futile. Mr. Williams's account of the event is mostly consistent with the police reports attached to his complaint, and so the material facts are

7

undisputed. A plaintiff can plead himself out of court if he pleads facts that preclude relief. *See* Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007); McCready v. Ebay, Inc., 453 F.3d 882, 888 (7th Cir. 2006). Although Mr. Williams' injuries are unfortunate, the complaint doesn't allege that the police officers used force beyond what was reasonably necessary to subdue him while he was actively resisting arrest in the presence of an unsecured gun.

For these reasons, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A.

SO ORDERED on September 9, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT
